## Ex Parte E. M. Turman.

The provision of the constitution of the State and of the Confederate States, guaranteeing to every citizen a speedy and public trial in all criminal accusations, cannot be held to mean, that in all possible vicissitudes of human affairs, a person who is accused of a crime shall have a speedy and public trial, in due form of law; but it was intended to prevent the government from oppressing the citizen, by holding criminal prosecutions suspended over him for an indefinite time; and to prevent delays in the customary administration of justice, by imposing upon the judicial tribunals an obligation to proceed with reasonable dispatch, in the trial of criminal accusations.

This constitutional provision applies to all criminal accusations, without respect to the grade of crime of which the accused may stand charged; and while it is intended for the protection of the citizen, it does not place him upon such a vantage ground, that the state cannot demand from him such services, as under the circumstances of the country he ought, for the public good, or for the public safety, to render.

The State, by her militia law, has not exempted from military service persons who are under bond to answer criminal accusations of any kind; nor does the exemption law of the Confederate States, excuse such persons from service; but, by necessary construction, the militia law of the State and the conscript laws, must be held to operate only on persons who are enjoying the rights of citizens, and in the exercise of personal freedom.

One who is under bond to appear before the civil tribunals, is to a certain extent in the custody of the tribunal, or of the law; but being in the actual enjoyment of personal freedom, for the time being, a party may be required by the State to render any service not inconsistent with the qualification which has been, by law, imposed upon the right of a party to enjoy his freedom, and not inconsistent with the policy which the State has declared by her general law for the punishment of crimes.

It seems that the District Court, having a party under bond, has the power to issue a writ to a military officer in a camp within its jurisdiction, requiring him to appear before the court and to bring the party into court for trial; and it would be the duty of the officer to obey such writ.

A party under bond for his appearance, to answer a charge of felony, is not thereby exempted from military service in the State or Confederate army, during the pendency of the accusation.

Tried before the Supreme Court sitting at Tyler. Applicant petitioned for the writ of *Habeas Corpus* on the 13th day of May, 1863, alleging that he was illegally restrained of his liberty

by S. M. Warner, in Smith county. Writ issued May 14, 1863. Respondent made his return to the writ on the 15th day of May, 1863, in which return he says that applicant reported to him under orders from Gen. D. B. Martin, general enrolling officer eastern district of Texas, on the 14th day of March, 1863, and that he holds applicant only as a conscript liable to do military duty under the Confederate States conscript laws. On the 23d of January, 1863, applicant was indicted by the grand jury of Smith county, for "knowingly, maliciously and advisedly discouraging the people from enlisting into the service of the Confederate States of America, and did then and there knowingly, maliciously and advisedly discourage the people from enlisting into the service of this State, the said State of Texas, and then and there willfully and maliciously did dispose the people to favor the enemy." On the 14th of March, 1863, the applicant gave bond for his appearance before the District Court of Smith county, to answer said indictment.

*Attorney-General,* for respondent.

BELL, J. Application to be discharged from the restraint in which the applicant alleges that he is held by S. M. Warner.

We have given the case of the applicant all the consideration possible, in view of the circumstances under which it has been presented to us; and we are of opinion that the applicant ought to be remanded into the official custody of the respondent, S. M. Warner.

The questions involved in the case are of great magnitude, and they cannot, by any means, be said to be free from difficulty. Some of the most important rights of the citizen, some of his highest duties to the State, the public policy of the State in respect to the punishment of high crimes, and the relation between the State government and the Confederate government, are, to a certain extent, concerned in the decision of a case like the present. The constitutions of the State and of the Confederate States guarantee to every citizen a speedy and public trial, "in all criminal accusations." This provision of our constitutions must receive a

reasonable interpretation. It cannot be held to mean that in all the possible vicissitudes of human affairs, a person who is accused of a crime shall have a speedy and public trial in due form of law, because there may be times when the civil administration will be suspended by the force of uncontrollable circumstances. This constitutional provision was adopted upon general consideraations growing out of the experience of past times, and was intended to prevent the government from oppressing the citizen by holding criminal prosecutions suspended over him for an indefinite time; and it was, also, intended to prevent delays in the customary administration of justice, by imposing upon the judicial tribunals an obligation to proceed with reasonable dispatch in the trial of criminal accusations.

The constitutional provision, to which allusion has been made, applies to all criminal accusations, without respect to the grade of the crime of which the accused may stand charged, and it would follow, that if one who is accused of a felony has a constitutional right to a speedy trial, so that the service which a citizen may be required to render to the State, cannot be exacted from him, during the pendency of the accusation, so every other person, who might happen to be accused of any offence against the law, though it were only a misdemeanor or petty offence, would have the same constitutional right.

We are of opinion, therefore, that the provision of the constitution which secures to the accused the right to a speedy trial in all criminal accusations, while it is intended for the protection of the citizen against oppression and unreasonable and unnecessary delays in the administration of justice, does not place him upon such a vantage ground that the State cannot demand from him such services as, under the circumstances of the country, he ought, for the public good, or the public safety, to render. It is undoubtedly true, that it is the policy of the State to bring to trial persons who may be accused of high crimes. In times of peace, this is one of the highest duties which the State owes to itself, or to the people. But this policy and this duty are not so supreme as to override all other considerations, and remain beyond and above the influence of circumstances. They spring out of regard

for the public welfare, and may be modified by considerations nearly touching the public safety.

The Legislature, at its last regular session, passed an act providing that the bonds and recognizances of persons accused of misdemeanors, and the bonds and recognizances of their sureties, and of witnesses in such cases, should not be forfeited while such persons were in the military service of the Confederate States or of this State. This act was passed before the conscript laws were enacted, and while the armies of the Confederacy were being formed by the voluntary enlistment of the people. The act was doubtless intended to encourage enlistments by giving assurance to those persons to whom it referred, that they would suffer no pecuniary detriment at the hands of the State while in the military service. I think it may, also, safely be said, that the act contains a clear implication that the State, at that time, did not think proper to hold out any encouragement to persons accused of high crimes (felonies) to enter into the military service. But since the statute referred to was passed, the circumstances of the country have changed; the conscript laws have been enacted, have been held by this court to be constitutional, and are therefore to be treated as the law of the land, to which the State of Texas has given assent.

It is held that the right of the Confederate States to compel the citizens of the States to do military service, is superior to the right of the State over her militia. It follows, that if the State of Texas can require the applicant in this case to do military service as a militiaman, the Confederate States can also require him to do military service in the army of the Confedcracy, in obedience to the conscript law. The State, by her militia law, has not exempted from service persons who are under bond to answer criminal accusations of any kind; neither does the exemption law of the Confederate States excuse such persons from service. But we are of opinion that, by necessary construction, the militia law of the State, and the conscript laws, must be held to operate only on persons who are enjoying the rights of citizens, and in the exercise of personal freedom. We cannot suppose that the officers appointed by the State to enroll the militia, nor the enrolling officers

of the Confederate States could go into the jails and discharge persons accused of crimes, from custody, for the purpose of placing them in the military service. And this, because such persons are in the hands of civil officers, in obedience to the mandate of the civil tribunals and of the laws, and it cannot be supposed that the State, or the Confederate States, intends any interference by the military with the civil authority, much less to make the civil authority which is already in action, subordinate to the subsequent demand of the military authority. It may then be said that one who is under bond to appear before the civil tribunals is, to a certain extent, in the custody of the tribunal or of the law. This is true, and may, perhaps, further the solution of the questions involved in a case like the present. Being in the actual enjoyment af personal freedom, for the time being, the party may be required, by the State, to render any service not inconsistent with the qualification which has been, by law, imposed upon the right of the party to enjoy his freedom, and not inconsistent with the policy which the State has declared by her general law for the punishment of crimes, and by the action which has been taken in the particular case. We do not doubt that if the District Court were now in session in the county of Smith, the judge of the court could issue the proper writ to the military officer having the applicant in a camp of instruction within the jurisdiction of the court, requiring him to bring the party into court for trial; and it would be the duty of the officer to obey the writ. It may, also, be the duty of the military officer, having knowledge of the fact that a conscript, under his command, is under bond to appear before one of the State courts, to send the party before the court to answer the accusation, and to comply with the condition of his bond; but this may be a duty which the courts will not undertake prospectively to compel the officer to discharge.

If we hold that the mere fact that the party is under bond for his appearance to answer a charge of felony, exempts him from military service during the pendency of the accusation, it would follow that all witnesses both for the State and the defendant, who are under recognizance or bond for their appearance, must also be held to be exempt; and we can see no very clear ground on which

we can say, that all persons who are under bond or recognizance for their appearance to answer charges of misdemeanors, and their witnesses and the States witnesses in such cases, are not legally in the same category. We do not see our way clear to go to this length, and we cannot see how to stop short of it, except upon the principle that while a party is in the actual enjoyment of his freedom as a citizen, he may be required to do such services as other citizens are required to do; and that the military authorities ought, as far as possible, to yield obedience to the civil tribunals, and assist them in bringing offenders against the laws to punishment.

Upon the views here suggested, the applicant is remanded into the custody of the respondent, S. M. Warner.

This case has been submitted to us amidst a pressure of other business, on the eve of the adjournment of the court, and without argument or investigation by counsel. We have felt the magnitude of the questions, and regret that we have not been able to give them the thorough investigation with reference to authorities, to which their importance and the considerations involved entitle them.

Applicant remanded.