### ASPLEY v. MURPHY et al.

*(Circuit Court, N. D. Texas. February 21, 1892.)*

1. PROBATE COURTS—JURISDICTION—SPECIFIC PERFORMANCE—REPEAL OF STATUTE.
    Act Tex. 1846, entitled "An act to organize probate courts," which in section 27 (Hart. Dig. art. 1108) expressly repeals "all laws relative to the duties of probate courts and the settlement of successions," was applicable only to laws conferring general probate jurisdiction, and not to Act 1844, § 2, (Hart. Dig. art. 1070,) which vests in those courts the special power of enforcing specific performance of contracts to convey lands.

2. COURTS—JURISDICTION—REPEALING ACTS—CONSTRUCTION.
    Where jurisdiction in special cases is conferred upon a court by legislative act, and its exercise in a particular instance is questioned after the lapse of 45 years, on the ground that the act was subsequently repealed, the court will resolve any doubts as to the scope of the repealing statute in favor of the jurisdiction.

At Law. Action by R. F. Aspley against J. P. Murphy *et al.* to recover an undivided two-ninths interest in and to block 77, in the city of Dallas, Tex. Heard on a question as to the admissibility in evidence of certain records of the probate court.

*Chas. I. Evans, G. J. Gooch,* and *Bassett, Seay & Muse,* for plaintiff.
*E. J. Simkins* and *Simkins & Morrow,* for defendants.

MAXEY, District Judge, *(orally.)* The question in this case arises upon the offer on the part of defendants to introduce in evidence a transcript of certain orders and proceedings of the probate court of Houston county, passed in 1847. From an inspection of the transcript, it appears that a petition was filed by the administrator of John Grigsby's estate, one Edens, praying for authority to execute a deed to the heirs of Crawford Grigsby for 1,000 acres of the John Grigsby league and labor. That petition was filed and granted by the probate court on the 29th day of March, 1847. On the same day, as a basis for the petition, an affidavit was filed by William Grigsby, in which he deposed to the execution of a contract entered into between John Grigsby and his son, Crawford, in 1840 or 1841, by the terms of which the father agreed to convey to his son, Crawford, 1,000 acres of the league and labor, in consideration of services to be rendered by the latter in locating the land, etc.; the affiant further deposing that Crawford fully complied with his part of the agreement. The order of court granting the application, it appears, was filed on September 28, 1847. The deed of the administrator was executed in pursuance of the order on July 17, 1847.

While counsel for the plaintiff object to the validity of all the papers embodied in the transcript, their particular objection goes to the order of the court; they insisting that the probate court of Houston county was without authority or jurisdiction in 1847 to pass the order in question. On the other hand, counsel for the defendants maintain—*First*, that the court had jurisdiction under the act of 1844, which they say was then in force; or, *secondly*, if repealed, the probate court had jurisdiction, under the general power granted by the constitution of 1845

and the act of 1846, construed in connection therewith, to make the order; or, if mistaken in the positions assumed, they further maintain, *third,* that the recognition of the claim for land, under the thirteenth section of the act of 1846, is a judgment which cannot be collaterally attacked.

The question then is, did the probate court have jurisdiction—was it clothed with power—in 1847 to entertain the application of the administrator, and pass the order prayed for by him? It is clear that, if the court was without jurisdiction, every order passed in the proceeding was a nullity; for orders, judgments, and decrees cannot be rendered by a court in the absence of power to make them. Jurisdiction is the power to hear and determine a cause, and, when the power is wanting, acts performed by the court are without validity. If, then, there was no jurisdiction, the order was void; and if the jurisdiction depended alone upon the act of 1844, and that act was repealed when the order was made, then was also the order a nullity. I say if the jurisdiction depended alone upon the act of 1844, and that act had been repealed by the statute of 1846, then the order passed in 1847 was without validity. That position is clearly sustained by the supreme court of the United States in the case of *Bank* v. *Dudley,* 2 Pet. 523, 524, and so it is held by the same court in the case of *Insurance Co.* v. *Ritchie,* 5 Wall. 541. See, also, *Houston* v. *Killough,* (Tex. Sup.) 16 S. W. Rep. 57. Was the act of 1844, then, repealed by the act of 1846? By reference to the early laws of Texas, it will be seen that the first act conferring jurisdiction upon the probate courts generally in reference to the estates of decedents was passed in 1840, beginning with article 995 of Hartley's Digest. The caption of that act reads as follows: "An act regulating the duties of probate courts and the settlement of successions." Without consuming time to call attention to all of the intervening acts directly relating to the settlement of successions, we pass to the consideration of the act claimed to have been repealed, the act of 1844, with this caption, "An act to define and fix the practice of probate courts in certain cases." The second section of that act (article 1070 of Hartley's Digest) vests in courts of probate the power to enforce specific performance of contracts to convey land. Then follows the act of 1846, the caption of which employs these words: "An act to organize probate courts." The repealing clause of that act will be found in section 27 or article 1108 of Hartley's Digest, and is in the following language: "That all laws and parts of laws heretofore in force relative to the duties of probate courts and the settlement of successions be, and the same are hereby, repealed."

It is not claimed in this case, as I understand the argument of counsel, that the act of 1846 repeals by implication the act of 1844. There seems to be no irreconcilable conflict or repugnancy between the two acts, and it could not be successfully claimed that the one, by implication merely, repeals the other. *U. S.* v. *Railway Co.,* 40 Fed. Rep. 769, and authorities there cited. Does the repealing clause of the act of 1846 expressly repeal section 2 of the act of 1844? In the construction of statutes courts discover, if possible, the legislative intent. See *Oates* v.

*Bank,* 100 U. S. 244. In support of that view, reference is also made to the case of *Ellis* v. *Batts,* 26 Tex. 706.

The question, then, as I have said, which presents itself to the court in all cases of this kind, is this: What was the intention of the lawmakers? Courts carry out the intention of the lawmaking power without reference to the policy of statutes. Did the legislature, by the words employed in the clause repealing all laws and parts of laws relative to "the settlement of successions," intend to embrace laws conferring the power to enforce performance of executory contracts for the conveyance of title to lands? This is the first proposition to be considered.

It is clear, by reference to the authorities, that it did not so intend, and in support of that view reference is again made to the case of *Bank* v. *Dudley,* reported in 2 Pet. 524; also to *Kegans* v. *Allcorn,* 9 Tex. 25, and the case of *Houston* v. *Killough,* reported in 16 S. W. Rep., decided by the supreme court of this state. It is evident that the words embodied in the repealing clause of the act of 1846—that is, those words which repeal all laws and parts of laws relative "to the settlement of successions"—cannot be construed to include a statute which confers jurisdiction on a probate court to enforce the performance of an executory contract to convey land. That is clearly decided by both the supreme court of the United States and the supreme court of Texas. What then, in reference to the particular point before the court, is the source of the power to enforce performance of an executory contract to convey title to land? Whence does it originate? Out of what does it grow? The supreme court of Texas leaves no doubt upon that point. Proceeding, in the case of *Houston* v. *Killough,* Chief Justice STAYTON, delivering the opinion, says:

"In *Booth* v. *Todd,* 8 Tex. 137, it was held that the general grant of probate powers would not confer on county courts the power to decide litigated accounts between the representatives of partners, and it was said that there was perhaps but one case in which litigation on a claim against the deceased is conducted before the probate court, and that is for the enforcement of an executory contract to convey title to lands. The source of this power was not in the general grant of probate jurisdiction, but in the statute which specifically gave it."

Hence it becomes apparent that the source of this power will not be discovered in the general grant of jurisdiction to the probate courts; it is not to be found there, and, if it exists at all, it must be found in the statute which specifically gives it. It must be presumed that the legislature, in passing the act of 1846, had in view this distinction; that they passed the act with the understanding and with the knowledge that the power to enforce the specific performance of contracts to convey lands did not originate in the general grant of jurisdiction to the probate courts as such. If that be true, does the language "repeal all laws and parts of laws in force relative to the duties of probate courts and the settlement of successions" operate to repeal all prior laws, both general and special, prescribing duties of probate courts, etc., or only those general laws relating to the settlement of successions and the general duties of

probate courts as purely courts of probate? If the intention had been to repeal all laws, was not the act of 1841, relating to deceased soldiers' estates, obliterated? That act, which is embodied in articles 1053 and 1054 of Hartley's Digest, passed in 1841, relates to estates of deceased persons, and confers upon the probate courts certain powers and duties in reference to the administration of those estates. In *Duncan* v. *Veal*, 49 Tex. 613, the question was directly presented to the supreme court of this state whether the act of 1846 repealed the act of 1841. Chief Justice MOORE, or, rather, Mr. Associate Justice MOORE, at that time, in holding that the act of 1841 was not repealed, uses this language:

"Evidently to hold the act of January 14, 1841, enacted for the special purpose of protecting the estates of volunteer soldiers from foreign countries who had fallen in battle, or otherwise died in the republic, repealed by the repealing clause of this general act of 1846, organizing probate courts, would do violence to the well-established canons for the construction of special and general laws, and their proper relation and bearing to each other."

That decision is referred to with approval by the supreme court in the late case of *Cattle Co.* v. *Boon*, reported in 73 Tex. 554, 11 S. W. Rep. 544. The supreme court then, as late as the time when the opinion in 73 Tex., 11 S. W. Rep., was rendered, cited with approval the rule announced in the case of *Duncan* v. *Veal*. If the act, then, of 1841 was not repealed, the question arises, why was it not? Mr. Justice MOORE replies that, under the well-recognized canons of construction, the act of 1846 could not be held to repeal it. The act of 1846 was "to organize probate courts," and in that act the general duties of the court and of administrators and executors were prescribed; it was a law general in its nature. The act of 1841, while a general law, was special in its character, and the court evidently held that a law general in its nature, prescribing the general duties of probate courts, would not be held to repeal a statute prescribing special duties in certain cases. See, also, *Ellis* v. *Batts*, 26 Tex. 708. If we look to the act of 1841, we find that it has reference to estates of deceased persons; there can be no escape from that conclusion. We find, also, that it prescribes the duties of the court. Now, the language of the repealing clause of the act of 1846, as I have already said, provides for the repeal of "all laws and parts of laws heretofore in force relative to the duties of probate courts and the settlement of successions." It would seem that the act of 1841 was embraced within that provision, but, under the accepted canons of construction, the supreme court of this state has held otherwise; that the act was not affected, but was in force after the act of 1846 was passed.

What is the act of 1844? We have seen, and it has been repeatedly held by the supreme court in the authorities referred to by counsel, that the probate courts had no jurisdiction to enforce the specific performance of a contract to convey title to land, until the act of 1844 was passed. We have seen that the general grant of jurisdiction to the probate courts, as such courts, did not include the power to enforce the performance of such a contract. Then, the act of 1844 was what? By its caption it was an act "to define and fix the practice of probate courts in certain

cases." It was an act to confer jurisdiction upon the probate courts in cases, among others, in which they, before that time, had no jurisdiction; it was a new law, originating a special jurisdiction, conferring special powers and special duties.

The act of 1846, as has been shown, did not repeal all laws relating to the duties of probate courts and the settlement of successions, and, as I have said, the law of 1841 embraced both of these subjects. What, then, did the legislature mean, in employing the words of the repealing act of 1846, "all laws and parts of laws heretofore in force relative to the duties of probate courts?" The meaning was to repeal all general laws relative to the settlement of successions, and all such laws relative to the general powers and duties of the probate courts as courts of probate. The intention was not to repeal a statute prescribing duties in special cases, touching the settlement of successions, as in effect held in *Duncan* v. *Veal*, nor a statute which conferred jurisdiction in special cases, where such jurisdiction was not embraced in the general grant of jurisdiction to probate courts. As has been seen, the power to enforce performance of an executory contract to convey title to land was not included in the general grant of powers and jurisdiction of the probate court, and the repealing clause, therefore, of the act of 1846 did not affect section 2 of the act of 1844. As indicative of the legislative intent, it may be pertinent to add that the repealing clause of the act of 1846 employs the words used in the caption of the act of 1840, thus evidencing the purpose to repeal that act and statutes of a similar nature. But no reference is made to the act of 1844, nor to the jurisdiction conferred by its second section. It follows from what has been said that the second section was in force in 1847, when the order of the probate court of Houston county was passed.

In this connection I go one step further, and I trust that counsel will not misunderstand the court in what it will now say. The act of 1844, if not repealed by the act of 1846, clearly conferred upon the probate court the power to make the order complained of; that I believe is admitted, or, at least, is not denied, by counsel on either side. There then is plainly the existence of a special power and jurisdiction affirmatively granted by a general statute. Now, if a fair doubt existed in my mind as to the true construction of the repealing clause of the act of 1846, such doubt, in my judgment, after the lapse of 45 years, should be resolved in favor of the jurisdiction. I do not say that jurisdiction will be presumed. That is not the law; I do not so hold. What I do say is simply this: That where jurisdiction in special cases is clearly granted by an act duly passed by the legislature, and, after 45 years have intervened, the jurisdiction is challenged, on the ground that it was withdrawn by a subsequent repealing statute, if a doubt fairly exists as to the proper construction which the repealing statute should receive, such a doubt should be given in favor of sustaining rather than in defeating the jurisdiction.

There are other important and interesting questions in this case raised and discussed by counsel on both sides with great ability. Whether,

under the act of 1846, particularly the thirteenth section of that act, the probate court of Houston county had the power to approve a land claim, and order the execution of a deed by the administrator, is a question of much nicety. It is not essential to the disposition of this case for the court to pass directly upon that question. It will, however, be observed that the section last mentioned authorizes probate courts to approve claims not only for money and personal property, but also for land. Would it not seem that, having the power to approve a claim for land, the court, by necessary implication, had all necessary power to render effective and operative the power expressly granted? If that be true, then the court had the power to make the decree, and order the execution of the deed. But a decision of that question is deemed unnecessary, and is not passed upon.

My conclusion is that the probate court of Houston county had jurisdiction to pass the order in question, and that the administrator had the power to execute the deed conveying 1,000 acres of the Grigsby league and labor. If there existed any irregularities in the proceedings affecting either the order of the court or subsequent execution of the deed, under thoroughly established principles, they could not be inquired into in a collateral proceeding of this kind, and they may well be deemed healed and cured by the half century which has since elapsed. The objections of the plaintiff will be overruled, and exceptions noted.

The record being admitted in evidence, the court instructed the jury to return a verdict for the defendants. Motion for new trial presented, argued, and refused.