## DISCHARGE OF A DEFENDANT FOR FAILURE TO PROSECUTE.

### Common Pleas Court of Hamilton County.

STATE OF OHIO V. HARRY BROWN, RAY LONG AND ALFRED SEGAL.

### Decided, January, 1914.

*Criminal Law—Right of a Defendant to a Speedy Trial—Attitude of the Ohio Courts With Reference Thereto—Constitutional and Statutory Provisions.*

1. After the lapse of three or more terms of court from the return of an indictment it is a matter of discretion on the part of the trial judge whether a motion to be discharged for failure to prosecute shall be granted.

2. The only grounds under the statutes and the decision of the Supreme Court in *Ex Parte McGehan*, which justify a continuance of a case to the next term, is the absence of material evidence to procure which the state has exercised reasonable efforts, and a showing that there is just ground for believing that such evidence can be procured at the next term of court.

*Thomas L. Pogue,* Prosecuting Attorney, for the State.
*J. W. Curts,* contra.

GORMAN, J.

On motion to discharge defendants for failure to prosecute.

On the 6th day of April, 1907, the defendants, Brown, Long and Segal, were jointly indicted by the grand jury for criminal libel. Without setting out in full the indictment, it charges in substance that these defendants did on the 30th day of October, 1906, unlawfully and maliciously write, print and publish a certain false and malicious libel of and concerning one George A. Gohen, the clerk of the board of deputy state supervisors and inspectors of elections in and for Hamilton county (commonly called the board of elections) and there is set out in full the alleged libel which it is claimed was published in the Cincinnati *Post* on said 30th day of October, 1906, and which in substance

is claimed to have charged said Gohen, as clerk of said board, with holding up and delaying the printing of the registration lists of voters in several precincts of the city of Cincinnati where election frauds had prevailed, for the alleged purpose of aiding the so-called Cox gang in the election to be held in November, 1906, and to hamper, hinder and delay the honest elections committee in its efforts to ferret out fraudulent registrations and prevent illegal voting especially in the fourth, sixth, eighth and eighteenth wards of said city, all of which publication it is set out was contrary to the statute in such case made and provided and against the peace and dignity of the state of Ohio. The indictment is signed by H. M. Rulison, then prosecuting attorney of Hamilton county, and indorsed "A True Bill" by the foreman of the grand jury.

Upon its face the indictment shows that it was not reported and filed until more than five months after the alleged publication of the libel. Immediately on the filing of the indictment, April 6th, 1907, warrants were issued for the three defendants and upon their arrest they entered into bail for their appearance as provided by law. Thereafter motions to quash and demurrers were filed and overruled by the court during the year 1907, and on December 17, 1907, by consent of parties a continuance of the trial of the prosecution was had until the January term, 1908. No trial was had in the January, April, July or October terms, 1908, but on the 8th of December, 1908, an entry was made recitng that the case has been set for trial for December 17, 1908, and the same is continued for further setting and that the defendants be remanded for further proceedings. Nothing further appears of record in the case until December 29, 1911, except that there is a general entry on the journal of the court continuing all cases, prosecutions and matters not finally heard and disposed of until the next succeeding term of court, for want of time to hear the same. This formal entry was made at the close of each term of court by the clerk, without any application from the defendants and without their knowledge or consent. On December 29, 1911, the judge then sitting in the criminal division or room of this court entered a *nolle prosequi*

on the indictment upon the recommendation in writing of the prosecuting attorney, Henry T. Hunt, wherein he expressed doubt as to whether or not the publication was libelous, and further stating that the case had been pending nearly five years and had been pending for almost two years before he, Mr. Hunt, took office and that in his opinion a conviction was almost impossible; that a trial would involve great expense to the state and nothing would be accomplished; that a prosecution of the case would serve no good end, and that the prosecuting witness, if wronged, had a remedy in a civil action at law. On the day following the entry of the *nolle,* the judge who entered the same, on the motion of Mr. Muller, attorney for George A. Gohen, the prosecuting witness, set aside the *nolle.*

Thereafter, down to the January term, 1914, a period of two years, nothing appears to have been done in the case, except that the clerk of his own volition made the general entry on the journal at the close of each term, continuing all cases and matters undisposed of until the next succeeding term because of the want of time to hear the same. No such entry was specially made in this case under the number and caption of the case at any time.

At the beginning of this term (January, 1914) the court directed the prosecuting attorney to set for trial and hearing all pending cases and prosecutions beginning with the oldest pending case, and lo! and behold! this case appears, still pending and never tried, although a lapse of almost seven years has occurred since the return of the indictment, and twenty-seven terms of Court.

On the day the case was set for trial, January 19, 1914, the defendants filed a motion to be discharged, setting out that since the return of the indictment no action has been taken in the case except the filing and overruling of the motions to quash and the demurrers; that they have been held by recognizance to answer said indictment without trial for a period of more than three terms, not including the term at which recognizance was first taken thereon; that they entered into recognizance bonds and pleaded "not guilty" on January 3, 1908; that no continu-

ance was had upon their motion since said pleas were entered at the October term, 1907, and that the delay in the trial of this prosecution was not caused by any act of theirs or either of them, and that there was time at the third term after the taking of said recognizance in which to try the case and that there has been time for said trial since that time.

Upon the presentation of this motion for hearing the prosecuting witness was present and also the prosecuting attorney. The prosecuting attorney, in answer to the court's inquiry as to the truth of the matters set forth in the motion, stated in open court that said matters and things set out therein were true, and that the prosecuting attorney could only submit the matter to the court as a question of law to be determined upon the motion and the record of the case. The prosecuting witness stated that he had no personal interest in the prosecution and no motive to subserve except to do his duty as a citizen; that he has always been ready and willing to appear and testify but has never been called upon to do so; that he is now ready and willing to appear and testify if and whenever the case may be called for trial. It was stated by counsel for the defense and admitted by the prosecuting attorney that a material witness, Mr. Achilles Pugh, who printed the registration lists of voters in 1906, has since died, but the prosecutor stated that if the court should overrule this application and order the case to be tried the state would be prepared to go to trial within twenty-four hours from the time of making such an order. It further appears that up to the time of Mr. Pugh's death all the witnesses needed by the state, including the prosecuting witness, were within easy reach in this county. No excuse was given by the prosecutor for the delay, except that he—Mr. Pogue—the present prosecutor, should not be blamed entirely for the delay, inasmuch as Mr. Rulison was prosecutor for almost two years after the indictment was returned and Mr. Hunt was prosecutor for three years succeeding Mr. Rulison, and that he, the present prosecutor, had been in office but two years of the lapsed period. The court believes that the present prosecutor can not reasonably be charged with more than two-sevenths of the delay and that the

remainder of the delayed time should be charged up to his predecessors.

The question now submitted to the court on the foregoing facts is, whether or not this motion or application of these defendants should be granted.   Under the Constitution of the United States and the Constitution and laws of this state are the defendants entitled to a discharge and should they now go acquit for the failure of the state to give them a speedy public trial?

By the VI amendment to the Federal Constitution it is provided that:

''In all criminal prosecutions, the accused shall enjoy the right to a speedy public trial, by an impartial jury of the state and district wherein the crime shall have been committed.''   *   *   *

The fathers of the great republic, of which we have the honor to be citizens, were familiar with the numerous instances of persons charged with the commission of crimes being immured in dungeons and their trials put off until, in many cases, death nollied the charge, and released many an innocent person from his suffering and imprisonment.   They well know that in the history of the English people the event that shone brightest was that memorable struggle which involved the life or death of those fundamental rights of universal interest, the right to life, liberty and the enjoyment of happiness, the right of the government with reference to persons accused of crime to have a speedy and impartial trial by a jury of their peers—that struggle with the obstinate and tyrannical King John, which ended at Runny Mead in wresting from him the Great Charter, the Petition of Rights and the Habeas Corpus Act, and from which time the historian Hallam tells us no man can be detained in prison without trial.   It was with knowledge of this great struggle in their minds that the framers of our national Constitution inserted the guaranty contained in the amendment just cited.   And this guaranty of ''speedy trial'' covers every citizen and sojourner within our gates like the Aegis of Minerva.   The framers of the first Constitution of Ohio in 1802, not to be outdone by those who brought into the world a new nation, caused to be inserted

in the fundamental law of this state, Section 11, Article VIII, Constitution of 1802, which among other things guarantees, that:

"In all criminal prosecutions the accused hath a right   *   * * to a speedy public trial by an impartial jury of the county or district in which the offense shall have been committed." etc.

Again in 1851 the framers of our state Constitution in the Bill of Rights, Article I, Section 10, reaffirm in *haec verba* the provisions of the Constitution of 1802 with reference to a speedy trial in criminal prosecutions.

Almost, if not all, the states of the Union have constitutions containing substantially the same guaranty of a speedy trial in criminal prosecutions; so that it may be said that this great shield of defense has been bequeathed to us not only by the fathers, but has been inherited as an heirloom from the common law of England.

The Legislature of Ohio, for the purpose of quickening and giving effect to this provision of our state Constitution has in Sections 13685, 13686 and 13687, General Code, provided the course to be pursued by an accused person, whether imprisoned or held on bail, to be discharged without a trial whenever his constitutional right has been invaded by a refusal or neglect to afford him a speedy trial. Section 13685 applies to a person detained in jail awaiting trial, and is otherwise similar to Section 13686. Section 13686 affects and applies to persons released on bail and reads as follows:

"A person shall not be held by recognizance to answer an indictment, without trial, for a period of more than *three* terms, not including a term at which a recognizance was first taken thereon, if taken in term time. He shall be discharged unless a continuance is had on his motion, or the delay is caused by his act, or there is not time to try him at such *third* term, in which case he must be brought to trial at the next term or discharged."

Section 13687 reads as follows:

"When application is made for the discharge of a defendant under either of the next two preceding sections, if the court is

satisfied that there is material evidence for the state which can not then be had, that reasonable effort has been made to procure it and there is just ground to believe that such evidence can be had at the next term, the cause may be continued and the prisoner remanded or admitted to bail. If he be not brought to trial at the next term thereafter he shall then be discharged."

Considering these sections together with the constitutional provisions referred to, let us first examine the authorities in this state, wherein a construction has been placed upon either or all of these sections, to ascertain the attitude of the Ohio courts on this question of a speedy trial.

The first found is that of *Ex parte James McGehan,* 22 Ohio State, 442. McGehan was indicted for first degree murder in Butler county—a non-bailable offense. He entered a plea of not guilty at the January term, 1871—the same term at which he had been indicted, and he was committed to jail. On his application a change of venue was had at the June term, 1871, to Preble county, and the cause removed to that county and Mc-Gehan transferred to the jail of that county. No action was taken to try his case at the November term, which was the first term after the June term. At the next term in February, 1872, being the third term after the term at which he had been indicted, McGehan, who was still in jail, moved the court for his discharge on the grounds that he had not been brought to trial before the end of the second term after the term at which he had been indicted. This motion was overruled and McGehan committed to jail. That part of the indictment which charged premeditation and deliberation was then nollied and McGehan admitted to bail on the charge of manslaughter, and on *his own motion* the cause was continued to the next term of court. Thereupon McGehan applied to the Supreme Court for a writ of habeas corpus against the sheriff of Preble county asking to be discharged. In deciding the case the court refused the writ on two grounds:

First. The writ of habeas corpus would not lie so long as the order of the common pleas court overruling the prisoner's motion to be discharged remained in full force and unreversed, even

though it was an erroneous order, and further that the order could not be reviewed in a habeas corpus proceeding, as that would be a collateral attack before another tribunal.

Secondly. The court held that in order to entitle the prisoner to a discharge on the ground that he had not been brought to trial during the time limited by these sections (then Sections 161-162, code) now Sections 13686-13687, General Code, he must make application to the court therefor, and if when he makes such application, whether during the time limited or at a subsequent term of court, the state is ready to proceed with the trial or makes the showing to the court that there is material evidence which can not be had, that reasonable exertions have been made to procure the same and that there is just ground for believing that such evidence can be had at the succeeding term, the cause may be continued.

In the case at bar no such condition exists. The state does not claim that there is material evidence which could not be procured, nor does it ask for a continuance to the next term. The only grounds under the statute and this decision upon which this court would be justified in continuing this case to the next term would be the absence of material evidence, to procure which the state had used reasonable efforts; and a showing that there is just ground for believing that such evidence can be procured at the next term. No cause whatsoever for continuance is shown in the case at bar. When this application was made and heard the state was not then ready for trial, but the prosecutor stated in open court that if the court should overrule the motion of the defendants, it could be prepared for trial within twenty-four hours from that time. But even if the state were ready for trial when the motion was made and heard herein, or if it had cause for a continuance and were making an application therefore, nevertheless it rests in the sound discretion of the court to either grant the moton for discharge, or grant a continuance. The accused may not then be entitled, as a matter of right, to be discharged, nor is the state, as a matter of right, even though then ready to proceed to trial, after the lapse of more than three terms from the return of the indictment, entitled to have

the motion denied and proceed to trial. The language of the statute (Section 13687) is, *may* be continued, not *shall* be, indicating that the matter is left to the discretion of the court. And it will be shown by decisions to be cited that this is the view entertained by courts which have passed upon similar statutes.

The next case in Ohio wherein these sections were construed is *Erwin* v. *State*, 29 Ohio St., 186, and the court in that case held it was not error on the part of the court of common pleas to overrule an application to be discharged by a prisoner held in jail on an indictment, when the state was *then* ready for trial at the time the motion was taken up for consideration, the same being the last day of the term, and the motion having been filed but two days before the last day of the term. A perusal of the facts set out in this case will disclose that the defendant in that case did not bring himself within the terms of the statutes to entitle him to a discharge, and so the court held that under the facts of that case the accused's application to be discharged should have been refused, if the state was ready for trial.

In the case of *Johnson* v. *State*, 42 Ohio St., 207, the question for determination was whether the court had power to continue a cause of one held in jail under indictment, when one continuance had already been granted because of the absence of material witnesses, at the second term after such imprisonment. It was held that notwithstanding such first continuance, the court had power to again continue the case because of a want of time to try the cause at the term when the second continuance is granted. Judge Okey who announced the opinion in this case in speaking of the rights of the accused and the discretion lodged in the court to grant or refuse a discharge, says, on pages 208 and 209:

"Of course, when it appears that the statute has been *disregarded,* the accused is entitled to a discharge. But it must be remembered that a discharge is equivalent to a verdict of acquittal with judgment thereon. *Ex parte McGehan*, 22 O. S., 442; *Erwin* v. *State*, 29 O. S., 186."

And again on page 210, he says:

"As the court was vested with discretion to continue the cause for want of time to try it and exercised the power on November 3, 1883, being the last day of the May term, we are clear that the motion on November 5, 1883, being the first day of the November term, before the calendar for that term had been prepared, was unreasonable and might properly have been overruled at that time," etc.

In the case of *Corbett* v. *State*, 5 C. C. (old series), 155, the court held that it was not error on the part of the common pleas court to overrule the accused's several applications to be discharged because he had not been brought to trial within the time limited under these sections under consideration.

These are the only Ohio cases under these sections which the court has been able to discover after diligent search, and the purport of all of them is to be the effect that under the facts of each case it was not error to refuse the accused's application for discharge; that he was not in each case, as a matter of right, entitled to a discharge; but that the granting or overruling of the application for discharge rested in the sound discretion of the court to be exercised for the purpose of promoting justice and to be granted if the facts of the particular case warranted, and to be denied if the circumstances were such that the granting of the application would work an injustice and allow the guilty to escape. It involves the exercise of a discretion which can not be reviewed or overthrown unless it be shown that the court exercising the discretion was guilty of an abuse thereof.

In England, from the earliest times, a prisoner, in theory at least, enjoyed the right to a speedy trial which was procured for him by the commission of jail delivery which issued to the justices of Assize, and twice every year resulted in the jails being cleared and the prisoners confined therein being convicted and punished, or freed from jail.

By a speedy trial is meant one that can be had as soon after indictment as the prosecution can with reasonable diligence prepare for, regard being had to the terms of the court.

Cooley, in his work on Constitutional Limitations, 7th Edition, 440, says:

"Again it (the Constitution of the United States) requires that the trial be speedy; and here also the injunction is addressed to the sense of justice and sound judgment of the court. In this country where officers are specially appointed or elected to represent the people in these prosecutions, their position gives them an immense power for oppression; and it is feared that they do not always sufficiently appreciate the responsibility, and wield the power with due regard to the legal rights and privileges of the accused." Citing *Curtis* v. *State*, 6 Cold., 9.

He further says that further delay, beyond the first term after the indictment is returned, would not generally be allowed, without a more specific showing of the causes which prevent the state from proceeding to trial including the names of the witnesses, the steps taken to procure them and the facts expected to be proved by them in order that the court might judge of the reasonableness of the application (for delay); citing *U. S.* v. *Sacremento*, 2. Mont., 239; *Hancock* v. *State*, 14 Texas App., 392; *State* v. *Flooks*, 65 Ia., 452.

In the case *Ex parte Turman*, 26 Tex., 708, the court in commenting on this subject, says:

"The criminal courts are under obligation to proceed with reasonable dispatch according to the circumstances of the case."

The writ of habeas corpus was called into use in England and it was adopted as a part of our Federal Constitution to grant relief and liberty to those who were detained and imprisoned and denied the right to a speedy trial.

Will it be claimed by any one for a moment that reasonable dispatch or speed has been shown by the state in the case at bar, which has been allowed to slumber like Rip Van Winkle for a period of seven years notwithstanding the fact that all of the witnesses, so far as the court can learn, could have been brought into court within twenty-four hours and a trial had if the prosecuting attorneys, who have been in office all these years and the prosecuting witness, who has lived in this county continuously since the return of the indictment, had cared to press the case for trial? The very fact of the failure to bring the defendants to

trial during this long period of time raises a strong suspicion in the mind of the court, that the prosecution was not begun in good faith, nor the delays caused by any reason other than neglect of duty on the part of the state's counsel, or a reckless disregard of their duties to the state and to the defendants. When no reason is given for the delay, it not having been caused by applications for continuances on the part of the accused persons, it is reasonable to believe that the purpose in holding this prosecution over the heads of the defendants, like a sword of Damocles, in view of the character of the alleged libelous publication, has been to terrorize and intimidate the newspaper that published the article, and its staff of reporters and editors.

It is said by the court in the case of *Benton* v. *Commonwealth*, 90 Va., 328:

"But the policy of the law and the right to a speedy trial forbid that a person accused of crime shall be detained beyond any term of court at which he may be lawfully tried, unless good cause is shown for a continuance."

It is said in the case of *People* v. *Matson*, 129 Ill., 591, that a statute providing that an accused person should be brought to trial within a specified time (such as our statutes) is mandatory and imperative in its provisions and confers no discretion on the court.

In the case *In re McMicken*, 39 Kas., 406, the court said that the accused is entitled to be discharged after the lapse of time prescribed by law, where he has not been tried, if he brings himself within the statute by showing that he was not at fault and that he did not apply for a continuance, and where the prosecution shows no valid cause for delay.

To the same effect are the cases of *Robinson* v. *State*, 12 Mo., 592; *Cummins* v. *People*, 4 Colo. App., 71; *Brady* v. *People*, 51 Ill. App., 112; *Walker* v. *State*, 89 Ga., 482.

In the very strong case of *In re Begerow*, a habeas corpus case, 133 Cal., 349, it was held that:

"A party charged with a crime has the constitutional right to a speedy trial, and the court has no discretionary power to

deny him a right so important, or to prolong his imprisonment, without trial beyond the time provided by law.''

In this case, contrary to the rule laid down in *Ex parte McGehan,* 22 Ohio St., it was held that habeas corpus would lie; and on a showng that a delay of sixty days, the time limited in the statute in that state, had elapsed before trial, without fault on his part and without his consent, and that the postponement was not had on his application, the defendant was entitled to be discharged on habeas corpus.

In the Kansas case, *supra,. In re McMicken,* it was held also, that the accused could invoke the writ of habeas corpus to be discharged where he had not been granted a speedy trial.

See also to the same effect: *In re Garvey,* 7 Colo., 502; *People* v. *Douglass,* 100 Cal., 1; *U. S.* v. *Fox,* 3 Mont., 512; *State* v. *Rutherford,* 16 Tex. App., 649; *State* v. *Brodie,* 7 Wash., 442.

So that while the rule in Ohio and many other states is that in a proper case and on a proper showing by the accused the court has a discretion to discharge him or not, where he has not been brought to a trial within the statutory time, and the delays were not on his applications for continuances, or caused by his fault; in many other states the constitutional guaranty of a speedy trial imposes a mandatory duty upon the courts to discharge him upon his application, and a showing that he comes within the terms of the statute; and this court is of the opinion that upon a strong showing, such as has been made in the case at bar, it is not only discretionary with, but mandatory on the court to discharge the accused persons. A denial of the application of the defendants in this case would, in the opinion of the court, be a denial of their constitutional right and guaranty to a speedy trial.

If this case ever was one of great public interest it has long since ceased to be such, because of the failure to bring it to trial when the public may have been interested in the prosecution. The prosecuting witness in this case has another remedy in a civil action for defamation and libel if the publication was false and malicious, and this remedy he can pursue not only against the individuals indicted, but also against the owners and pub-

lishers of the paper wherein the article was published. Indeed, I am credibly informed that he did bring such a suit at or about the time this prosecution was set on foot. However that may be, it appears to the court that no useful public purpose can be subserved by continuing on the calendar of pending cases this ancient, hory-headed, untried prosecution, smacking largely of a personal and political character, growing out of incidents of days long past, when charges and counter-charges of political chicanery and corruption were the order of the day and looked upon as matters of course; when the administration of public affairs was such in many cases as to give just cause for severe criticism of many of our public officials.

It may be doubted whether this publication is criminally libelous, in view of the wide latitude allowed the press under the Constitution of the United States and the Constitution of this state, the former of which, Article I (amendment), prohibits Congress from abridging the freedom of the press, and the latter (Bill of Rights, Section 11) saves to every citizen the right to freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of the right; and prohibits the passage of any law to restrain or abridge the liberty of speech or of the press.

The prosecuting witness, at the time the alleged libelous article was published, was a public servant occupying a most important and responsible office, aiding in the administration of the laws, affecting the sacred rights of our citizens to vote and exercise their sovereignty. He was as such, a proper subject of fair criticism—but not, of course, false accusations or defamation.

He was a shining mark and a conspicuous target for the press and those actively engaged in the political contests; he was the cynosure of all the eyes of the electors; and it is scarcely to be wondered that he was criticized and perhaps libeled—yea, perhaps libeled in this case—but as to that the court expresses no opinion.

In *Boyle* v. *State*, 6 C. C., 163, it is said:

"A newspaper may with good motives and for justifiable ends, freely and boldly and with severity or ridicule, criticise and

comment upon the official conduct of public officials and draw any deductions from those actons and circumstances which, with any show of reason or fairness, might be claimed to follow therefrom.''

It is the fate of those who perform public duties to hear themselves criticized, and frequently slandered and libeled; and if the time of the courts were taken up with actions or prosecutions smacking of libels and slanders of public ·officials, a very considerable amount of annoying litigation would be occupying the forum of justice. Happily for us, very few public officers, who are criticized or libeled or slandered, take it seriously enough to resort to the courts for vindication, but are usually content to leave the question of the truth or falsity of the charges to the judgment of the American public, and to stand upon their own records and their character and reputation in the community. The sense of fair play of the American people and their keen foresight and knowledge of men and events, rarely fails to enable them to reach a correct conclusion as to the character, integrity and efficiency of their public servants.

If one has left the community in which he has resided for a long time, has disappeared and not been heard of or from for a period of seven years, the law presumes such a one to be dead, If this rule may fairly be applied to this prosecution and this indictment, it not having been tried for seven years, a presumption ought to arise that the case is dead—and of all the dead we mercifully say—''*de mortuis nil nisi bonum*,'' and upon their tombs we inscribe: ''*Requiescat in pace.*''

·It is time that this prosecution be ended and the accused released from its terrors. The motion to discharge the defendants for the reasons set out will be granted, and a judgment in accordance with this finding entered on the journal.